IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARIANN COLLINS,               )
RICK COLLINS,                  )
                               )
            Plaintiff,         )
v.                             )
                               )   CASE NO. 2:16-CV-262-WHA
BSI FINANCIAL SERVICES,        )   (WO)
SERVIS ONE INC., MCM CAPITAL   )
PARTNERS LLC, VENTURES         )
TRUST 2013-I-H-R, and          )
CITIMORTGAGE, INC.,            )
                               )
            Defendants.        )

## MEMORANDUM OPINION AND ORDER

### I.  INTRODUCTION

This matter comes before the court on a Motion to Dismiss Amended Complaint (Doc. # 19), filed by the Defendant, CitiMortgage, Inc. ("CitiMortgage") and the Joinder in CitiMortgage's Motion to Dismiss (Doc. # 21), filed by the other Defendants.

On March 7, 2016, Plaintiffs, Mariann Collins and Rick Collins (collectively, the "Plaintiffs") filed a Complaint against the Defendants in state court (Doc. # 1-6). CitiMortgage properly removed this action to federal court with joinder by the other Defendants, and, subsequently, CitiMortgage filed a Motion to Dismiss (Doc. # 8), under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). In response, Plaintiffs sought leave to amend their complaint under FRCP 15(a)(2), (Doc. # 11), which this court granted on May 23, 2016. (Doc. # 12). The Amended Complaint, (Doc. # 17), repled the same causes of action as the original Complaint, including: (1) Negligence; (2) Wantonness; (3) Unjust Enrichment; (4) Wrongful

1

Foreclosure; (5) Slander of Title; (6) Breach of Contract; (7) Fraud; (8) False Light Invasion of Privacy; (9) Defamation, Libel, Slander; (10) Violations of the Truth in Lending Act, 15 U.S.C. §§ 1601–1667f ("TILA"); (11) Violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601–2617 ("RESPA"); (12) Violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681– 1681y ("FCRA"); (13) Violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692– 1692p ("FDCPA"); and (14) Claim for Declaratory Relief. *Id.* Each claim is asserted against all Defendants. CitiMortgage again moved to dismiss all of Plaintiffs' claims (Doc. # 19), and the other Defendants joined (Doc. # 21).[1] For reasons to be discussed, the Motion to Dismiss is due to be GRANTED in part and DENIED in part.

## II.  STANDARD FOR MOTION TO DISMISS

The court accepts the plaintiffs' factual allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiffs' favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible

---

[1]  The other Defendants have not filed separate briefs, but in their Joinder have adopted the briefs of CitiMortgage (Doc. # 21).

on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

### III.  FACTS

The allegations of the Plaintiffs' complaint are as follows:

On June 19, 2000, Plaintiffs purchased a home in Montevallo, Alabama and entered into a mortgage loan with Ronnie Miskelly, Jr. on the property. (Doc. # 17). Thereafter, the loan was transferred; first, to Riverside Mortgage Company, Inc.; then, to "The Associates;" and, finally, to CitiMortgage. *Id.* When CitiMortgage received the loan, Plaintiffs were allegedly behind on their payments. Accordingly, the Plaintiffs agreed to pay an additional amount for twelve (12) months to bring the account up to date. *Id.*

In July 2014, Plaintiffs allegedly fell behind on their payments, and CitiMortgage initiated foreclosure proceedings on the Plaintiffs' property. *Id.* Plaintiffs allege, however, that they were not in default on their mortgage at the time and that the foreclosure proceedings were improper at that time. *Id.* Plaintiffs sent a letter to CitiMortgage's attorney including a qualified written request ("QWR"), asking for an accounting of the loan. *Id.* However, CitiMortgage did not respond until January 2015. At that point, the Plaintiffs again made arrangements to bring the account up to date. *Id.*

However, in July 2015, CitiMortgage again commenced foreclosure proceedings. *Id.* CitiMortgage attempted at least two other foreclosure proceedings in 2015, but each proceeding was stalled or canceled due to improper publication notices in the Montgomery Independent newspaper. CitiMortgage never foreclosed on the property. *Id.*

In November 2015, the loan was sold to Ventures Trust 2013-I-H-R and serviced by BSI Financial Services, Servis One Inc., and MCM Capital Partners LLC (collectively, the "other

3

Defendants").[2] *Id.* On November 8, 2015, the other Defendants improperly and wrongfully began foreclosure proceedings on the property. *Id.* Plaintiffs allege that the remaining Defendants reported such foreclosure to the national credit bureaus, which negatively affected their credit and reputation. *Id.*

Plaintiffs maintain, however, that at no point was the mortgage loan in default and that the attempted foreclosure proceedings were wrongful. *Id.*

## IV.   DISCUSSION

### A.   *Abandoned Claims (Count Eight & Fourteen)*

Plaintiffs did not respond to CitiMortgage's arguments to dismiss Plaintiffs' false light invasion of privacy claim (Count Eight), or its claim for Declaratory Relief (Count Fourteen). Consequently, Plaintiffs have abandoned these claims and they are subject to dismissal. *See Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *see also McMaster v. United States*, 177 F.3d 936, 940–41 (11th Cir. 1999) (noting that a claim may be considered abandoned when the allegation is included in the plaintiff's complaint but he fails to present any argument concerning the claim to the district court).

### B.   *Federal Claims*

Plaintiffs allege four (4) federal claims against CitiMortgage: (i) Violations of TILA, (ii) Violations of RESPA, (iii) Violations of the FCRA, and (iv) Violations of the FDCPA. The court will address these claims in succession.

#### 1.   **Violations of TILA (Count Ten)**

---

[2]  Plaintiffs do not direct any allegations towards CitiMortgage after November 8, 2015. *Id.*

With respect to Plaintiffs' TILA claim, CitiMortgage argues that it fails because CitiMortgage is not a creditor and because it is barred by the statute of limitations.[3] Also, this argument has been adopted by the remaining Defendants. TILA provides a private right of action to consumers against any "creditor" who fails to comply with the requirements imposed under the law. 15 U.S.C. § 1640(a). TILA defines the term "creditor" as follows:

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement."

15 U.S.C. § 1602(g). To qualify as a creditor under TILA, the entity must meet both prongs. *See Parker v. Potter*, 232 F.App'x 861, 864 (11th Cir. 2007).

Plaintiffs admit that CitiMortgage was not the initial creditor to whom the mortgage loan was first made payable. Plaintiffs' allege that they entered into the mortgage loan with Ronnie Miskelly, Jr. (Doc. # 17, p. 2). Further, Plaintiffs do not allege that any Defendant was involved in the mortgage loan at its inception, but rather only became involved after the loan was later

---

[3] As an initial matter, Plaintiffs' TILA claim fails because it "merely recite[s] an element of a claim without providing the facts from which one could draw such a conclusion." *Franklin v. Curry*, 738 F.3d 1246, 1248 n.1 (11th Cir. 2013). Plaintiffs' complaint alleges, "Defendants, are covered by the Act as it regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making defendant a creditor within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17)." (Doc. # 17, p. 17). Plaintiffs cannot rely upon "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. Without such factual enhancement, this court cannot "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Accordingly, Plaintiffs' complaint fails to state a claim upon which relief may be granted. However, even if Plaintiffs' allegations survived its pleading deficiencies under *Iqbal*, Plaintiffs' TILA claim still fails for the reasons stated herein.

transferred to CitiMortgage and then to Ventures Trust. Therefore, by Plaintiffs' own admission, the Defendants cannot qualify as a creditor under the second prong of TILA's definition of creditor, because they were not the creditor to whom the debt was initially made payable. *See Rice*, 2014 WL 3889472, at \*4.

Second, Plaintiffs' TILA claim is time barred. TILA establishes a one year statute of limitations from the date the transaction is consummated. *See* 15 U.S.C. § 1640(e);[4] *see also Velardo*, 298 F. App'x at 892. ("Nondisclosure is not a continuing violation for purposes of the statute of limitations.") Plaintiffs allege that the mortgage loan at issue in this case originated on June 19, 2000. Thus, the statute of limitations ran on June 19, 2001. Because Plaintiffs did not commence this action until March 7, 2016, Plaintiffs' TILA claim is time-barred as to all Defendants.

## 2.   Violations of RESPA (Count Eleven)

In Count Eleven, Plaintiffs allege that Defendants violated RESPA "by failing to acknowledge or respond to the Plaintiffs' Qualified Written Request (QWR)." (Doc. # 17, pp. 18–19). To state a claim under 12 U.S.C. § 2605(e), Plaintiffs must show: (1) that Defendants are servicers; (2) that Defendants received a QWR from the borrower; (3) that the QWR related to the servicing of the loan; (4) that Defendants failed to respond adequately; and (5) that Plaintiffs are entitled to actual or statutory damages. 12 U.S.C. § 2605(e); *Renfroe v. Nationstar Mortgage, LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016) ("We join our sister Circuits in recognizing that damages are an essential element in pleading a RESPA claim.")

---

[4] Section 1640(e) states, "any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ." Moreover, " [t]he violation 'occurs' when the transaction is consummated." *Velardo v. Fremont Inv. & Loan*, 298 F. App'x 890, 892 (11th Cir. 2008)

Defendants move for dismissal of Plaintiffs' RESPA claim, arguing, first, that Plaintiffs never submitted a QWR. (Doc. # 19, pp. 35–36). For a request to "qualify"—as a QWR—it must (1) be in writing, (2) include or allow the servicer to identify the name and account of the borrower, and (3) include a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower. 12 U.S.C. § 2605(e)(1)(B).

> To establish these requirements were met, the best practice is for a plaintiff to attach a copy of the QWR submitted along with their complaint. Where plaintiffs fail to provide a copy of the QWR itself, federal courts have routinely held that Plaintiffs must plead facts showing that the written request provided the detail necessary to qualify under the statute.

*Tallent v. BAC Home Loans*, No. 2:12-CV-3719-LSC, 2013 WL 2249107, at *4 (N.D. Ala. May 21, 2013).

In this case, Plaintiffs did not attach a copy of any QWR along with their complaint. In addition, Plaintiffs' Amended Complaint fails to allege that their requests met any of the requirements of § 2605(e)(1)(B); much less all three. Defendants rightly point out that "Plaintiffs have not alleged a single fact regarding the content of the alleged QWRs." (Doc. # 19, p. 35). Moreover, Plaintiffs do not rebut Defendants' argument in their Response. (Doc. # 30, pp. 25–26).[5] Accordingly, Plaintiffs' RESPA claim is due to be dismissed on this basis alone.

In addition, Plaintiffs' RESPA claim fails allege actual damages. Two types of damages are available under RESPA: (A) any actual damages to the borrower as a result of the failure to respond to the QWR; and (B) any additional damages, as the court may allow, in the case of a

---

[5] Plaintiffs' Response merely claims that they have set forth sufficient factual allegations that Defendants violated or are otherwise vicariously liable for violations of federal regulations 12 C.F.R. § 1024.41 and 12 C.F.R. 1024.35 of Regulation X promulgated under RESPA.

pattern or practice of noncompliance with the requirements of this section." 12 U.S.C. 2605(f)(1). "This language suggests there must be a "causal link" between the alleged violation and the damages." *Renfroe*, 822 F.3d at 1246.

In this case, Plaintiffs allege that they were damaged because they were not informed of the information regarding their loan . . . [and]were not able to stop the foreclosure of their home." (Doc. # 17, p. 19, ¶ 106). However, Plaintiffs further allege that no foreclosure sale ever occurred. Accordingly, even if Defendants failed to respond to their QWRs, Plaintiffs suffered no damages and Plaintiffs' RESPA claim is due to be dismissed.

### 3.   Violations of FCRA (Count Twelve)

Next, Defendants challenge Plaintiffs' FCRA claim. The FCRA provides exclusive remedies for claims by consumers against those who furnish information to credit reporting agencies. *See* § 15 U.S.C. § 1681s-2; *see also Green v. RBS Nat. Bank*, 288 Fed. App'x. 641, 642 (11th Cir. 2008). Plaintiffs make clear in their brief that they bring this claim under § 1681s-2(b), which provides a private cause of action (Doc. # 30, p. 27). However, a consumer may not bring a claim against a furnisher of information unless he first has pointed out a mistake to the consumer reporting agency, the consumer reporting agency has notified the furnisher of information of the mistake, and the furnisher of information fails to investigate or correct the information. *See* 1681s-2(b); *see also Green*, 288 F. App'x at 642 ("The FCRA does provide a private right of action for a violation of § 1681s-2(b), but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency.").

The Amended Complaint alleges that "the Collinses contacted the credit national bureaus and informed them of the inaccurate information and disputed same" (Doc. 17, p. 19), that "[t]he National Credit Bureaus notified the Defendants of the disputed credit reporting; however,

Defendants failed and refused to act on that notice for the credit reporting agencies and failed and refused to make any changes or corrections regarding its reporting of the loan status to the credit bureaus" (Doc. # 17, p. 20) after they "failed to conduct a reasonable investigation with respect to consumer credit data it reported about the Plaintiff." *Id.* While the Plaintiffs have alleged the basic elements required for this claim, the allegations are problematic because they are directed against all Defendants, the period of their alleged contacts with the Defendants complaining of inaccurate reporting ran from September 2012 until January 31, 2016 (Doc. # 17, p. 19), and the Amended Complaint alleges that "[i]n November 2015, the loan was allegedly sold again to Ventures Trust 2013-I-H-R, BSI, Servis One, Inc., and MCM Capital Partners LLC became the servicers of the mortgage loan . . . ." Because of that, the court will grant the Motions to Dismiss this claim, but without prejudice to allow a time for amendment. Any amendment should, to the extent counsel may do so without violating Fed. R. Civ. P. 11, include allegations as to which credit bureaus notified which Defendants of the consumer dispute, when, and after which how the receiving Defendant failed to comply with the FCRA.

### 4. Violations of FDCPA (Count Thirteen)

Defendants contend that they are not "debt collectors" subject to this Act.

To state a claim under the FDCPA, a plaintiff must establish, among other things, that the Defendant is a "debt collector." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1216 (11th Cir. 2012). The Amended Complaint alleges in paragraph 1 under "Parties" that "[t]he Defendants . . . are 'debt collectors' as that term is defined by 15 U.S.C. § 1692A(6). (Doc. # 17, p.1). That conclusory allegation, however, is not sufficient as to any Defendant.

The Amended Complaint alleges that the mortgage loan in question was sold, transferred or assigned to CitiMortgage by a previous owner at some time, and that in November 2015 it was

sold again to the Defendant Ventures Trust 2013-I-H-R. It alleges that BSI, Servis One, Inc., and MCM Capital Partners LLC then became the servicers of the mortgage loan.

The FDCPA defines a debt collector as any person who (1) uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or (2) who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. *See* 15 U.S.C. § 1692a(6). Even if a Defendant qualifies under one of those definitions, however, its collection activity is excluded from the term "debt collector" to the extent that it "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(f)(iii).

In this case, the Plaintiffs contend that they were never in default. Also, although the Amended Complaint directs this claim against all Defendants it does not allege what each did, and when, in violation of the statute.

The court will dismiss this claim, but without prejudice to the Plaintiffs filing an amended claim for violation of the FDCPA, if they can do so under the constraints of Fed. R. Civ. P. 11. Any amended claim must allege facts as to each Defendant that qualify it as a "debt collector" under the statutory definition, *see* 15 U.S.C. § 1692a(6), and keep it from coming within the exclusion, *see* 15 U.S.C. § 1692a(6)(f)(iii), and, if they can do that, further as to each Defendant, what it did and when that violated the statute.

### C. State Law Claims

Five (5) of Plaintiffs' state law claims include state law theories relating to the furnishing of inaccurate information to consumer reporting agencies. The Defendants argue that remedies for this conduct are governed by the FCRA, and that any state law remedy for the same conduct is preempted by the FCRA. Accordingly, the court will address the preemption argument first. Then,

the court will address the Plaintiffs' remaining claims, in turn.

### i. FCRA Preemption (Counts One, Two, Seven, Eight, and Nine)

"The stated purpose of the FCRA is 'to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report.'" *Equifax Inc. v. F. T. C.*, 678 F.2d 1047, 1048 (11th Cir. 1982) (citing S. Rep. No. 91-517, 91st Cong. 1st Sess. 1 (1969)). The FCRA sets forth the duties for those who furnish information to consumer reporting agencies, *see* 15 U.S.C. § 1681s-2[6], and establishes a process by which consumers can dispute the accuracy of information reported on their credit report, *see* U.S.C. §§ 1681n[7]; 1681o[8]. Importantly, though, the FCRA contains two preemption provisions concerning the availability of state law remedies against furnishers of information for the same conduct: 15 U.S.C. § 1681h(e) and 15 U.S.C. § 1681t(b)(1)(F).

Section 1681h(e) states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

Section 1681t(b)(1), on the other hand, provides:

---

[6] 15 U.S.C. § 1681s-2(a)(1)(A) states, "A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."

[7] 15 U.S.C. § 1681n governs civil liability for willful noncompliance.

[8] 15 U.S.C. § 1681o governs civil liability for negligent noncompliance.

> No requirement or prohibition may be imposed under the laws of any State—
>
> (1) with respect to any subject matter regulated under—
>
> . . .
>
> (F) section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies.

While some district courts have found these overlapping statutes problematic, *see*

*Woltersdorf v. Pentagon Federal Credit Union*, 320 F. Supp. 2d 1222, 1224 (N.D. Ala. 2004);

*McCloud v. Homeside Lending*, 309 F. Supp. 2d 1335 (N.D. Ala. 2004); *Watkins v. Trans Union,*

*L.L.C.*, 118 F. Supp. 2d 1217 (N.D. Ala. 2000), this court has consistently distinguished the two.

*See Knudson v. Wachovia Bank*, 513 F. Supp. 2d 1255, 1259 (M.D. Ala. 2007) (Albritton, J.).[9] To

---

[9]     The court notes that the Eleventh Circuit has not directly addressed whether § 1681t(b)(1)(F) is in conflict with § 1681h(e). *See, e.g., Lofton-Taylor v. Verizon Wireless*, 262 Fed.Appx. 999, 1002 (11th Cir. 2008) (noting that because 15 U.S.C. § 1681h(e) preempts state law defamation and invasion of privacy claims, it "need not decide whether the preemption language in § 1681t(b)(1)(F) is broad enough to also preclude [other state law claims]"). Over time, this apparent silence has resulted in considerable division among Alabama district court judges over the proper scope of FCRA preemption. *See Hamilton v. Midland Funding, LLC*, 2015 WL 5084234, at *6 (N.D. Ala. Aug. 27, 2015) (Kallon, J.); *Taylor v. Midland Funding, LLC*, 2015 WL 4670314, at *9–12 (N.D. Ala. Aug. 6, 2015) (Cooglar, J.); *Dial v. Midland Funding, LLC*, 2015 WL 751690, at *6 (N.D. Ala. Feb. 23, 2015) (Acker, Jr., J.).

Nevertheless, "there appears to be a growing consensus [within the Eleventh Circuit] that tort claims based on a furnisher's alleged reporting of inaccurate credit information to credit agencies fall within the scope of section 1681t(b)(1)(F), not section 1681h(e), and are preempted." *Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *7 (N.D. Ala. Jan. 27, 2016); *see Gregory v. Select Portfolio Servicing, Inc.*, No. 2:15-CV-00781-JHE, 2016 WL 4540891, at *8 (N.D. Ala. Aug. 31, 2016) (England, J.); *Taylor*, 2015 WL 4670314, at *9–12 (N.D. Ala. Aug. 6, 2015) (Cooglar, J.); *Granville Alley v. Farmers Bank, Inc.*, No. 3:13-CV-146 CAR, 2014 WL 4287103, at *6 (M.D. Ga. Aug. 29, 2014) (Royal, J.); *Lett v. Midland Funding LLC*, No. 2:13CV665-MHT, 2013 WL 6162674, at *1 (M.D. Ala. Nov. 22, 2013) (Thompson, J.); *Folkes v. Equifax Info. Servs. LLC*, No. 1:12-CV-900-WKW, 2013 WL 1946219, at *3 (M.D. Ala. May 9, 2013) (Watkins, C.J.); *Spencer v. Nat'l City Mortgage*, 831 F. Supp. 2d 1353, 1363 (N.D. Ga. 2011) (Batten, J.); *Schlueter v. BellSouth Telecommunications*, 770 F. Supp. 2d 1204, 1209 (N.D. Ala. 2010). (Blackburn, J.).

Other circuits have adopted this approach as well. *See, e.g., MacPherson v. JP Morgan Chase Bank, N.A.*, 665 F.3d 45, 47–48 (2d Cir. 2011) (reasoning that "the operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not

the extent § 1681t(b)(1)(F) overlaps with § 1681h(e), it is not redundant, because, as the Seventh

Circuit Court of Appeals noted in *Pursell v. Bank of America*, "Section 1681h(e) preempts some

state claims that could arise out of reports to credit agencies[, while] § 1681t(b)(1)(F) preempts

more of these claims." 659 F.3d 622, 625 (7th Cir. 2011). Moreover, § 1681t(b)(1)(F) is not in

conflict with § 1681h(e), because § 1681t(b)(1)(F) is the exclusive remedy for tortious conduct

against those who *furnish* information to credit reporting agencies under § 1681s-2, *see Knudson*,

513 F. Supp. 2d at 1260, while § 1681h(e) regulates disclosures to consumers and provides a

remedy against *users* of said information. *See Schlueter v. BellSouth Telecommunications*, 770 F. Supp.

2d at 1209.

In *Knudson*, Plaintiff alleged that his creditworthiness had been compromised when

Defendant, Wachovia Bank, reported inaccurate information to consumer reporting agencies;

specifically, that Plaintiff's closed car loan was delinquent and past due. *Id.* at 1256. Plaintiff sued

Wachovia under the FCRA and, in addition, asserted a variety of state law claims, including for

defamation, invasion of privacy, violation of a Consumer Protection Act, and negligence. *Id.* at

1257. Wachovia moved to dismiss Plaintiff's state law claims on the basis of preemption. *Id.* This

court agreed, reasoning, "§ 1681t(b)(1)(F) provides that no requirement or prohibition may be

imposed under the laws of any State with respect to any subject matter regulated under section

1681s-2 . . . ." *Id.* Because "[t]he violations of state law concerned the same conduct regulated

under 1681s-2," Plaintiff's state law claims were preempted. *Id.*

Likewise, five (5) of Plaintiffs' state law claims, or portions thereof, concern conduct

regulated under 1681s-2. Specifically, in Count One, Negligence, Plaintiffs allege, in part, that all

---

prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption");
*Purcell v. Bank of America*, 659 F.3d 622 (7th Cir. 2011) (same); *Ross v. F.D.I.C.*, 625 F.3d 808, 814 (4th
Cir. 2010) (same).

Defendants were negligent by:

> failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy;

(Doc. # 17, p. 8–9). In Count Two (Wantonness), Plaintiffs allege, in part, that Defendants

> failed to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy.

(Doc. # 17, p. 9). In Count Seven, Fraud, Plaintiffs allege that all Defendants committed fraud

because they:

> misrepresented that the loan was in default. Further, the Defendant make false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the credit history of the Plaintiff that was known to be false.

(Doc. # 17, p. 12–13). Count Eight, Placed in a False Light, Plaintiffs claim, in part, that the

Defendants held them up in a false light by making "undesirable and negative and credit reputation

remarks on or about the Collinses in the national credit reporting media." (Doc. # 17, p. 13–14).

Finally, in Count Nine, Defamation, Libel, Slander, Plaintiffs allege that all Defendants

committed Defamation, Libel, Slander, in part, because they:

> willfully, wantonly, recklessly and/or maliciously published and communicated false and defamatory statements regarding the Plaintiff and said statements have subjected the Plaintiff to the denial of credit by third parties, resulted in homeowner's insurance cancellation and harmed the Plaintiffs' credit reputation . . . . The Defendant communicated to credit reporting agencies and/or other third parties, false information that the Collinses defaulted on the loan and was in foreclosure, disseminated and imputed false and misleading credit history and worthiness information concerning

14

> the Collinses . . . . Defendants knew this information was inaccurate at the time it published this notice in the local paper, and the published false information harmed the Collinses' reputation and character. As a result, the Collinses' suffered damages of their reputation which negatively affected their credit and their business causing monetary losses.

(Doc. # 17, p. 14–16). All of these claims are based, in part, on the allegation that the Defendants furnished inaccurate information to consumer reporting agencies. To that extent, those claims are preempted under § 1681t(b)(1)(F). *See also Gregory v. Select Portfolio Servicing, Inc.*, slip copy, No.: 2:15-cv-00781-JHE, 2016 WL 4540891, at *8 (N.D. Ala. Aug. 31, 2016) (dismissing Plaintiff's "state-law claims to the extent they address the subject matter regulated under § 1681s-2" because they were preempted by the FCRA). Plaintiffs' remedy for this conduct is governed wholly by the FCRA, previously discussed. Accordingly, Counts One, Two, Seven, Eight, and Nine, are due to be dismissed to the extent they allege bases for the claims that are preempted by the FCRA.

### 2.   Negligence (Count One), Wantonness (Count Two)

Defendants challenge the remainder of Plaintiffs' negligence and wantonness claims for failure to state claims. Plaintiffs allege that Defendants were negligent and wanton because: (i) they breached duties imposed under the mortgage contract; (ii) they breached a duty to service the mortgage contract; (iii) they breached a duty to train and supervise their employees; and (iv), for the first time in their Response to Defendants' Motions to Dismiss (Doc. # 30), they breached statutory duties imposed under the federal RESPA statute. Defendants argue that they were not negligent or wanton and that these claims are due to be dismissed because they did not owe any duty to Plaintiffs. The court agrees.

"To establish negligence [under Alabama law], the plaintiff must prove: (1) a duty to a

foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Lemley v. Wilson*, 178 So. 3d 834, 841 (Ala. 2015). Failure to establish any one of these elements renders a plaintiff's claim for negligence insufficient. *See Calvert Fire Ins. Co. v. Green*, 180 So. 2d 269, 273 (Ala. 1965). Whether a duty exists is a question of law for the court. *See Garner v. Covington County*, 624 So. 2d 1346, 1350 (Ala. 1993).

In this case, Defendants did not owe a general duty of care to the Plaintiffs as borrowers. "Courts have traditionally viewed the relationship between a bank and its customer as a creditor-debtor relationship that does not impose a fiduciary duty on the bank." *K & C Dev. Corp. v. AmSouth Bank*, 597 So. 2d 671, 675 (Ala. 1992); *see also Wilkerson v. Gozdan*, No. 2:14-CV-693-WKW, 2014 WL 4093279, at *4 n.8 (M.D. Ala. Aug. 19, 2014) (noting "absent special circumstances, Alabama law recognizes no fiduciary duty on the part of a loan servicer toward a borrower"); *Shewmake v. Anderson,* 2012 WL 5378942, at *5 (N.D.Ala. Oct. 30, 2012) ("Under Alabama law, the relationship of a lender to a borrower generally does not impose a fiduciary duty on the lender. This general rule also applies to the relationship between a mortgagee and mortgagor.")

In addition, the mortgage contract did not establish any extra-contractual, tort-like duties on Defendants. In fact, "Alabama law does not recognize a tort-like cause of action for the breach of a duty created by a contract." *Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206, 1210 (M.D. Ala. 2002). Instead, "a negligent failure to perform a contract . . . is but a breach of the contract." *Vines v. Crescent Transit Co.*, 85 So. 2d 436, 440 (1956); *see also Barber v. Business Prods. Ctr.*, 677 So. 2d 223, 228 (Ala. 1996) (stating "a mere failure to perform a contractual obligation is not a tort"). Plaintiffs' Amended Complaint alleges that Defendants negligently (Count One) and wantonly (Count Two) "serviced the loan made the basis of this suit" in various ways. (Doc. # 17,

16

pp. 8–9). All of these claims arise out of obligations under the mortgage contract. Accordingly, any claim for a breach of those duties must sound in contract, not tort.

The Supreme Court of Alabama has held there is no tort cause of action for wanton servicing of a mortgage account because the duties and breaches would not exist but for the contractual relationship. *U.S. Bank Nat. Ass'n v. Shepherd*, __ So. 3d __, No. 1140376, 2015 WL 7356384, at *12 (Ala. Nov. 20, 2015). In so holding, the Court stated that "a veritable avalanche of recent (and apparently unanimous) federal precedent has found that no cause of action for negligent or wanton servicing of a mortgage account exists under Alabama law." The Court cited this court's decision in *Ott v. Quicken Loans, Inc.*, No. 2:13-cv-441-WHA, 2015 WL 248938 (M.D. Ala. Jan. 20, 2015), among others. *See also Shedd v. Wells Fargo Bank, N.A..*, No. 14-0275-WS-M, 2016 WL 3264127, at *4 (S.D. Ala. June 13, 2016) Therefore, Plaintiffs' claims based on negligent and wanton servicing of the account are due to be dismissed.

The Plaintiffs' claims of negligently and wantonly training and supervising their employees also fail. "To establish a claim of negligent supervision, the plaintiff must demonstrate that (1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice adequately." *Edwards v. Hyundai Motor Mfg. Alabama, LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009) (citing *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999); *Armstrong Bus. Servs. v. AmSouth Bank*, 817 So. 2d 665, 682 (Ala. 2001).

Here, Plaintiffs allege that Defendants were negligent and wanton by failing to properly train their employees on the thorough investigation of disputed accounts ;failed to properly train and/or supervise their employees and agents with regard to the handling of Plaintiffs' loan account

and failing to remove the adverse reporting from Plaintiffs' credit once they disputed the same. The investigation by employees would be governed by the FCRA, Section 1681s-2, which, as previously noted, preempts a state law claim. The other allegations amount to claims of negligent and wanton servicing of the mortgage account, which are not torts recognized under Alabama law. *See Shepherd*, 2015 WL 7356384, at *12. Therefore, these counts fail to allege claims for negligent and wanton failure to train and supervise for which relief may be granted. *Gregory v. Select Portfolio Servicing, Inc.*, 2016 WL 4540891, at *11 (N.D. Ala. Aug. 31, 2016). Accordingly, Plaintiffs' claims for negligent and wanton supervision fail to state a claim upon which relief may be granted.

Finally, the federal RESPA statute does not impose any extra-contractual duties on the Defendants. In a similar case, Judge Steele soundly rejected the argument that federal statutes, such as RESPA, impose extra-contractual duties on defendants, stating:

> Plaintiffs attempt to circumvent these principles by asserting that statutes, rather than contracts, form the basis for the duties that plaintiffs claim were breached. This argument is unpersuasive for a host of reasons. First, plaintiffs' Complaint neither provides an inkling that [its claims] are proceeding under a negligence *per se* theory nor recites any statutes as being the source of the duties that they claim were breached; therefore, it does not comport with *Twombly/Iqbal* pleading requirements. Even plaintiffs' brief does not fill in these gaps by articulating which statute(s) they contend provide the legal underpinnings for their negligence and wantonness claims herein. (Had the brief included that information, plaintiffs still would not prevail, as a party cannot amend its pleading via brief in response to a dispositive motion.) Second, federal courts in Alabama have given short shrift to similar efforts invoking the doctrine of negligence *per se* to outflank the phalanx of case authorities holding that Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing. *See Costine,* 946 F.Supp.2d at 1233–34; *Prickett,* 946 F.Supp.2d at 1247. . . . Fourth, the [Plaintiffs'] appeal to negligence *per se* cannot help them because the legal duties underlying their claims against [the Defendants] arise in contract. The statutes in play in this case

> regulate the contractual relationship between the [Plaintiffs] and
> [the Defendants], but do not eliminate or supplant that contractual
> relationship; therefore, the reasoning of the line of authorities
> beginning with *Blake* (*i.e.,* that the obligations in question are rooted
> in contract rather than tort) remains fully intact, even in the face of a
> negligence *per se* claim (had plaintiffs properly presented one in
> their pleading, which they did not).

*James*, 92 F. Supp. 3d at 1200, n.9; *see also Bush v. J.P. Morgan Chase Bank, N.A.*, No.

2:15-CV-00769-JEO, 2016 WL 324993, at *9 (N.D. Ala. Jan. 27, 2016). Accordingly, Plaintiffs'

argument that the "servicer violated the duty owed to them as imposed by RESPA when it fails

[sic] to respond to a request for loss mitigation, failed to process their application for loss

mitigation, and failed to postpone proceeding with a foreclose [sic] until a decision is made with

regard to loss mitigation" fails as a matter of law.

For all of the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' negligence and

wantonness claims are due to be GRANTED.

### 3.   Unjust Enrichment (Count Three)

Next, Defendants dispute Plaintiffs' unjust enrichment claim because, they argue, implied

contract remedies are unavailable when an express contract governs the agreement between the

parties. "The doctrine of unjust enrichment is an old equitable remedy permitting the court in

equity and good conscience to disallow one to be unjustly enriched at the expense of another."

*Scrushy v. Tucker*, 955 So. 2d 988, 1011 (Ala. 2006) (internal citations and quotations omitted).

However, "under Alabama law, claims of both an express and an implied contract on the same

subject matter are generally incompatible." *Kennedy v. Polar-BEK & Baker Wildwood*

*Partnership*, 682 So.2d 443, 447 (Ala. 1996). In fact, the Alabama Supreme Court has recognized

that "where an express contract exists between two parties, the law generally will not recognize an

implied contract regarding the same subject matter." *Id.*

Plaintiffs contend that the Defendants were unjustly enriched "by the payment of fees, insurance proceeds and equity in the home" when they "[attempted] foreclosure on the home of the Plaintiff in violation of law." (Doc. # 17, p. 10). However, this conduct concerns the same subject matter as the underlying mortgage contract at issue in this case. Therefore, Plaintiffs' unjust enrichment claim is due to be dismissed. *See also Rice v. JP Morgan Chase Bank NA*, No. 7:14-cv-00318-LSC, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014) (dismissing a claim for unjust enrichment because a mortgage contract governed the issues in dispute).

### 4.   Wrongful Foreclosure (Count Four)

Defendants next challenges Plaintiffs' claim for wrongful foreclosure. The Supreme Court of Alabama has explained that "Alabama has long recognized a cause of action for 'wrongful foreclosure' arising out of the exercise of a power-of-sale provision in a mortgage." *Jackson v. Wells Fargo Bank, N.A.*, No. 1100594, 2012 WL 517482 (Feb. 17, 2012). "A mortgagor has a wrongful foreclosure action whenever a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First Am. Fed. Sav. & Loan Assoc.*, 607 So.2d 180, 182 (Ala.1992).

However, the hallmark of a wrongful foreclosure claim is that a foreclosure sale actually has occurred. *See Rice*, 2014 WL 3889472, at *8 ("To state a wrongful foreclosure claim, the plaintiff must plead facts suggesting there [was] an actual foreclosure."); *ECP Fin. II LLC v. Ivey*, No. 6:13-cv-00920-LSC, 2013 WL 6330936, at *3 (N.D. Ala. Dec. 5, 2013) ("The plain reading of the terms 'uses the power of sale' in the wrongful foreclosure claim establishes that there must be an actual foreclosure sale."); *Vance v. Ocwen Loan Servicing, LLC*, No. 2:12-CV-00588-RDP, 2012 WL 2036412, at *3 (N.D. Ala. Nov. 26, 2012) ("[I]n order to state a claim for wrongful foreclosure, a foreclosure sale must have taken place.")

In this case, Plaintiffs allege that Defendants "wrongfully initiated and attempted to conduct a foreclosure proceeding against the Plaintiff." (Doc. # 17, p. 11). However, the Plaintiffs fail to allege that a foreclosure sale ever took place. Accordingly, Plaintiffs' claim for wrongful foreclosure is insufficient on its face and cannot survive a 12(b)(6) motion for failure to state a claim. *See also Bush*, 2016 WL 324993, at *11 (dismissing an identical wrongful foreclosure claim because it was based on an allegation of attempted foreclosure).

### 5.   Slander of Title (Count Five)

Additionally, Defendants contend that Plaintiffs' slander of title claim is insufficient and due to be dismissed. Under Alabama law, to establish a claim for slander of title, the plaintiff must show:

> (1) Ownership of the property by plaintiff; (2) falsity of the words published; (3) malice of defendant in publishing the false statements; (4) publication to some person other than the owner; (5) the publication must be in disparagement of plaintiff's property or the title thereof; and (6) that special damages were the proximate result of such publication (setting them out in detail).

*Folmar v. Empire Fire & Marine Ins. Co.*, 856 So. 2d 807, 809 (Ala. 2003).

Defendants argue that Plaintiffs' slander of title claim is deficient because Plaintiffs have not alleged malice or special damages. "To satisfy the special damages pleading requirement, a plaintiff must allege that the defendant's false publication 'interrupted, or injuriously affected, some dealing of the plaintiff with his property' or caused the plaintiff to incur expenses 'to relieve his right to the property from the damnifying effect of such false and malicious slander.' " *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N.D. Ala. 2013) (quoting *Ebersole v. Fields*, 62 So. 73, 75 (Ala. 1913). Moreover, "[s]pecial damages must be 'distinctly and particularly set out' in the complaint, and '[a]n allegation of loss in general terms is not sufficient.' " *Id.*

21

A failure to plead special damages is fatal to Plaintiffs' slander of title claim. *See Dent v. Balch*, 104 So. 651, 652 (1925) ("In actions for slander of title, special damage of a pecuniary nature is the gist of the action, and such damage must be directly and particularly set out in the complaint; an allegation of loss in general terms not being sufficient."); *Stewart v. Williams*, 2110725, 2013 WL 1165383 (Ala. Civ. App. Mar. 22, 2013) (noting that special damages is an "essential element of the cause of action for slander of title") (citing W. Prosser, *The Law of Torts* § 128, at 920 (4th ed. 1971)). In other words, special damages must be "distinctly and particularly set out" in the complaint, and "[a]n allegation of loss in general terms is not sufficient." *Ebersole*, 62 So. at 75.

Here, Plaintiffs allege that Defendants' slandering of Plaintiffs' title caused the Plaintiffs to "suffer injuries and damages." (Doc. 17, p. 11). However, this allegation does not meet the particularity requirement for pleading special damages. *See Prickett*, 946 F. Supp. 2d at 1244. In *Prickett*, Judge Cooglar dismissed a similar slander of title claim where the Plaintiffs merely alleged "[Defendant's] conduct 'was the proximate cause of injuries and damages.'" *Id.* The court reasoned, "This allegation does not describe with particularity the damages that resulted from the [Defendant's] actions, and is therefore insufficient to state a claim for slander of title under Alabama law." Likewise, a conclusory allegation that Defendants' conduct caused the Plaintiff to "suffer injuries and damages," does not meet the particularity requirement for pleading special damages.

Because a failure to plead malice and special damages is dispositive of a slander of title claim, Plaintiffs' slander of title claim is due to be dismissed, but the court will allow the Plaintiffs to replead.

### 6.   Breach of Contract (Count Six)

22

Defendants next contend that Count Six of Plaintiffs' Amended Complaint is due to be dismissed. (Doc. # 19, p. 23). "The elements of a breach of contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). The linchpin of a breach of contracts claim is the existence of a valid and enforceable contract. *See Webb v. Ocwen Loan Servicing, LLC*, No. 1:11-cv-732, 2012 WL 5906729, at *8 (S.D. Ala. Nov. 26, 2012). Defendants argue that they were not parties to the original mortgage loan underlying this dispute, and that Plaintiffs expressly deny any transfer ever took place between the original contracting parties and Defendants.

Plaintiffs' Amended Complaint alleges that, although the Plaintiffs "signed a promissory note with Ronnie Miskelly, Jr.," the original contracting party, "[t]he mortgage loan was . . . later transferred and sold to CitiMortgage," (Doc. # 17, p. 2), and "the loan was allegedly sold again to Ventures Trust 2013-T-H-R. BSI, Servis One, Inc., and MCM Capital Partners, LLC became servicers of the mortgage loan (Doc. # 17, p. 5). The complaint goes on to state that Defendants "breached the terms and conditions of said mortgage contract . . . failed to apply payments properly . . . and failed to send proper notices" in breach of the mortgage contract. (Doc. # 17, p. 12). These allegations, however, are problematic in that they refer to all Defendants without alleging which Defendant did what, and when, that would constitute a breach of the mortgage contract.

Because the allegations of this count are unclear and confusing, the court will grant the motion to dismiss this claim, but will allow Plaintiffs to amend to include allegations as to which Defendant they claim breached the mortgage contract, when, and how. *See, e.g.*, *Bennett v. Nationstar Mortg., LLC*, No. 1:15-cv-165, 2015 WL 5294321, at *1, *14–15 (S.D. Ala. Sept. 8, 2015).

### 7.  Fraudulent Misrepresentation (Count Seven)

Next, the court turns to the Plaintiffs' fraudulent misrepresentation claim. Defendants move the court to dismiss the Plaintiffs' fraudulent misrepresentation claim because it is not pled with the requisite particularity and the Plaintiffs have failed to adequately allege detrimental reliance. This court agrees as to both.

Defendants first argue that Plaintiffs' fraudulent misrepresentation claim is not pled with the requisite particularity. Rule 9(b) of the Federal Rules of Civil Procedure requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). The Eleventh Circuit has clarified that Rule 9(b)'s particularity requirement "may be satisfied if the complaint sets forth: (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1370–71 (11th Cir. 1997) (internal citations and quotations omitted).

The court finds that the Plaintiffs failed to plead fraudulent misrepresentation with the requisite particularity. While Plaintiffs allege that "Defendant misrepresented that the loan was in default," (Doc. 17, p. 12), it is entirely unclear whether Plaintiffs are referring to CitiMortgage or another Defendant. Moreover, the Plaintiffs fail to allege what statements or representations were made. The Plaintiff states that the "Defendant made false and misleading representations, to wit: dissemination of inaccurate information regarding the loan account as being in default and dissemination of inaccurate information regarding the credit history and credit of the Plaintiff that

24

was known to be false." However, without more, such a broad and generalized statement does not meet the particularity requirement under Rule 9(b). *See Gregory*, 2016 WL 4540891, at *13 (dismissing the exact same allegation as "insufficient to allege fraud under Rule 9(b)"). Plaintiffs fail to state when, where, to whom, by whom, or in what manner these alleged representations were made. Rule 9(b) is designed to "[alert] defendants to the precise misconduct with which they are charged and [protect] defendants against spurious charges of immoral and fraudulent behavior." *Brooks*, 116 F.3d at 1370–71. Plaintiffs' vague allegations do none of these.

Furthermore, "[t]o establish a prima facie case of fraudulent misrepresentation, a plaintiff must show: (1) that the representation was false, (2) that it concerned a material fact, (3) that the plaintiff relied on the false representation, and (4) that actual injury resulted from that reliance." *Cook's Pest Control, Inc. v. Rebar*, 28 So. 3d 716, 725 (Ala. 2009). While Plaintiffs allege several misrepresentations, albeit inadequately, the only action they allege they took in reliance on them was that "as a result of said reliance [they] proceeded with the execution of the loan." (Doc. # 17, p. 13). Plaintiffs, however, executed the mortgage loan with Ronnie Miskelly, Jr., not a Defendant. Therefore, Plaintiffs could not possibly have relied on any representations by any of the Defendants when they executed the loan, since the Defendants had no involvement in the origination of the loan.

Accordingly, Plaintiffs' fraudulent misrepresentation claim is due to be dismissed because it fails to meet the procedural hurdles of Rule 9(b) and the substantive hurdles of detrimental reliance to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim. The Plaintiffs will be allowed to replead.

### 8.   Defamation, Libel, Slander (Count Nine)

Defendants next contend that Plaintiffs' Defamation, Libel, Slander claim should be

dismissed. Under Alabama law, defamation consists of "libel, which involves the use of print media to publish a defamatory comment; and slander, which involves the oral expression of a defamatory comment." *Corp. Am. Car Wash Sys. v. City of Birmingham*, No. 2:14-CV-781-RDP, 2016 WL 837718, at *7 (N.D. Ala. Mar. 4, 2016) (quoting *Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999)). As a procedural matter, in the absence of language imputing a person with the commission of a crime—that is, in the absence of slander *per se*—both libel and slander require Plaintiffs to plead special damages in accordance with Rule 9(g) of the Federal Rules of Civil Procedure. *See Ceravolo v. Brown*, 364 So. 2d 1155, 1157 (Ala. 1978); *see also* Fed. R. Civ. P. 9(g) ("If an item of special damage is claimed, it must be specifically stated.") "Evidence of special damages is evidence that the untrue statements resulted in a material loss capable of being measured in money." *Cottrell v. Nat'l Collegiate Athletic Ass'n*, 975 So. 2d 306, 331, n.10 (Ala. 2007).

In this case, Defendants argue that Plaintiffs failed to allege that any statements made by them resulted in a material loss to Plaintiffs. However, Plaintiffs' complaint does allege that "said statements have subjected the Plaintiff [sic] to the denial of credit by third parties, resulted in homeowner's insurance cancellation and harmed the Plaintiff's credit reputation," and "the Plaintiffs have suffered a loss of income due to their damaged reputations." These statements, if true, would evidence a material loss capable of being measured in money.

A problem with this count, however, as with other counts, is that the Plaintiffs claim against all Defendants but do not specify what each Defendant did. Basically, the libel or slander alleged is claiming that the Plaintiffs were in default on their mortgage when, in fact, they were not. They allege in Count Nine of the Amended Complaint that the libel was committed when "Defendants published in the local newspaper in Chilton County, Alabama, the false information

of the default on the loan in the foreclosure sale notice," (Doc. # 17, p. 15), while in the Statement of Facts, they also refer to a publication in the Montgomery Independent at a different time. (Doc. # 17, p. 5). Neither states which Defendant is referred to.

Also, Count Nine alleges that the Defendants communicated false information to credit reporting agencies, which the court has previously stated is a claim preempted by the FCRA, "and/or other third parties," without identifying which Defendant and whom the third parties were. (Doc. # 17, p. 15).

Therefore, the court will grant the motion to dismiss Count Nine, but will allow the Plaintiffs to file an amended claim distinguishing among Defendants and specifying what special damages were caused by which Defendant, by what act or acts, and when.

### D.   Leave to Amend

At the conclusion of each of its responses to Defendants' arguments to dismiss Plaintiffs' claims, Plaintiffs request leave of the court to amend their (amended) complaint to correct any deficiencies should the court find any. Defendants argue in response that these claims should be dismissed with prejudice. The court will allow leave to amend to the extent the Plaintiffs can re-plead consistent with this Order.

## V.   CONCLUSION

For the reasons stated herein, it is hereby ORDERED that the Motion to Dismiss (Doc. # 19) is GRANTED in part and DENIED in part, as follows.

1. The abandoned claims in Counts Eight and Fourteen are Dismissed with Prejudice.

2. Plaintiffs' Negligence (Count One), Wantonness (Count Two), Unjust Enrichment (Count Three), Wrongful Foreclosure (Count Four), TILA (Count Ten), and RESPA (Count Eleven) claims are Dismissed with Prejudice.

27

3. Plaintiffs' claims for Slander of Title (Count Five), Breach of Contract (Count Six), Fraudulent Misrepresentation (Count Seven), Defamation, Libel, Slander (Count Nine), FCRA (Count Twelve), and FDCPA (Count Thirteen) are Dismissed, with right to replead. Plaintiffs are allowed to replead any of these claims if they can do so consistent with the deficiencies set out in this Order and within the provisions of Rule 11. Plaintiffs are reminded that Rule 11(b)(3), Fed. R. Civ. P., provides that the party signing a pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support."

4. Plaintiffs are given until November 30, 2016 to file a Second Amended Complaint, to the extent they choose to do so. It must conform to the requirements of Local Rule 15.1 and be complete unto itself. It may not include any claim which has been dismissed with prejudice under this Order and may not state any new claims.

Done this 15th day of November, 2016.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE