IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARIANN COLLINS and
RICK COLLINS                          )
                                      )
          Plaintiffs,                 )
                                      )
     v.                               )     CASE NO. 2:16-CV-262-ECM
                                      )            (WO)
BSI FINANCIAL SERVICES; SERVIS        )
ONE INC.; MCM CAPITAL                 )
PARTNERS LLC; and                     )
VENTURES TRUST 2013-I-H-R,            )
                                      )
          Defendants.                 )

## MEMORANDUM OPINION AND ORDER

## I.      INTRODUCTION

Pending before the Court is Defendants BSI Financial Services; Servis One Inc.;

MCM Capital Partners; and Ventures Trust 2013-I-H-R's Motion for Summary Judgment.

For the reasons stated below, this motion is due to be granted.

## II.     PROCEDURAL FACTS

The Plaintiffs filed their initial mortgage foreclosure Complaint against the various

servicers and holders of their mortgage.  The Court gave the Plaintiffs two opportunities to

amend their deficient complaint. (Docs. 12, 35).  The Court then granted the Defendants'

Partial Motion to Dismiss Plaintiffs' Second Amended Complaint and denied the

Plaintiffs' request to further amend their complaint. (Doc. 59).  This left only a breach of

contract claim against the various defendants.  The Plaintiffs and Defendant CitiMortgage

filed a stipulation of dismissal (doc. 103), leaving only a breach of contract claim against

BSI Financial Services; Servis One Inc.; MCM Capital Partners LLC; and Ventures Trust 2013-I-H-R ("the Defendants").

### III.    SUBSTANTIVE FACTS

### A.    Default and Repayment Plan with CitiMortgage[1]

In 2000, the Plaintiffs and Ronnie Miskelly, Jr., an individual who is not part of the present dispute, entered into a real estate mortgage agreement.  Plaintiff Mariann Collins signed a promissory note in favor of Miskelly.  The substantive portion of the mortgage agreement is only 3-pages long.  At some point, CitiMortgage assumed the Plaintiffs' mortgage, and in 2012, CitiMortgage and the Plaintiffs entered into a forbearance agreement, apparently due to the Plaintiffs falling behind on their mortgage. (Doc. 97-2 at 49–50).   Throughout 2013, the Plaintiffs were to pay a higher monthly mortgage payment—approximately $920, instead of the normal $783—in order to bring their account current. (*Id*. at 50–51).  Based on various representations from CitiMortgage, Ms. Collins was under the impression that their monthly payment amount would return to the lower monthly payment amount in January 2014, after they successfully made the twelve monthly payments. (*Id*. at 50).

In March of 2013, the Plaintiffs' bank did not honor the check they wrote to pay the mortgage, presumably due to insufficient funds. (*Id.* at 121).  Thus, while the Plaintiffs attempted to make a timely payment, they did not pay CitiMortgage until April 1, 2013.

---

[1] CitiMortgage and the Plaintiffs have resolved their dispute, the remaining Defendants are BSI Financial Services; Servis One Inc.; MCM Capital Partners; and Ventures Trust 2013-I-H-R.

(*Id.* at 62).  According to the terms of their repayment agreement, this payment was one day late. (Doc. 97-4 at 4).

Plaintiffs continued making timely payments of $920 under the forbearance agreement, May through December, under the impression that the agreement was not modified or cancelled. (Doc. 97-2 at 63–64, 124).   In December of 2013, Ms. Collins called CitiMortgage to confirm that the December payment would be the last payment under the repayment plan and that the regular payment amount would start again in January 2014. (*Id.* at 64).  Ms. Collins represents that CitiMortgage confirmed that was accurate. (*Id*).

In January and February 2014, Plaintiffs made timely payments of $783 of their mortgage.  Around that time, CitiMortgage informed Ms. Collins that the account was short $180 and that the January and February payments were not applied to the loan but were being held  in a separate account. (*Id.* at 63–64).  When, on February 26, 2014, Plaintiffs received a defaulted mortgage letter, Ms. Collins again called CitiMortgage. (*Id.* at 65).  CitiMortgage informed her that the account was short $177.60.  (*Id*)

Plaintiffs tried to make payments until March 2014 when they retained an attorney. (*Id.* at 67).  At first, Ms. Collins made the payment to her attorney, who tried to ensure that CitiMortgage received and appropriately applied the payment. (*Id.* at 70).   Since CitiMortgage stopped accepting her payments, Ms. Collins believes the last time the she personally tried to make a payment was March 2014. (*Id.* at 70–72).

### B.        Defendants Assigned the Loan

According to Ms. Collins, she began communicating with a representative from Defendant BSI Financial Services in August 2015. (*Id.* at 127).  Supporting documents indicate that CitiMortgage assigned the mortgage to Ventures Trust 2013-I-H-R in October 2015 (Doc. 97-5), and that BSI Financial Services, Inc. began servicing the loan on September 22, 2015. (Doc. 97-1).  In their Second Amended Complaint the Plaintiffs assert that BSI assumed the loan in November 2015.  While the specific dates the Defendants assumed responsibility for the loan is unclear, the record reflects that it was sometime between August and November of 2015.[2]

Ms. Collins claims that when the Defendants assumed the mortgage, they immediately demanded $15,000 to bring her account current or else they would foreclose. (Doc. 97-2 at 157).  In the Plaintiffs' response brief, without citing the record, the Plaintiffs claim that the Defendants initiated foreclosure proceedings in February 2016. (Doc. 104 at 7).  Ms. Collins asserts that she informed the Defendants of the history with CitiMortgage, but that they made no attempts to remedy the issue. (*Id.* at 158).  Ms. Collins, however, admits that she never paid or attempted to pay the Defendants any money.  The Plaintiffs also fail to provide any documentation of the communication that occurred between themselves and the Defendants, and they fail to provide their own accounting of their loan. In short, the Plaintiffs appear to largely fault the Defendants for failing to work out a

---

[2] The record is also not entirely clear which of the Defendants are responsible for certain acts.  The Defendants did not make individual arguments that they should be dismissed, and the Court did not need to reach that issue.  Accordingly, the Court simply refers to the Defendants collectively.

repayment plan after they allege that CitiMortgage committed certain accounting errors. However, the Plaintiffs fail to adequately support their assertion that these Defendants breached any contract provisions.

## IV.   LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court shall grant a motion for "summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56)).   The movant can meet this burden by presenting evidence demonstrating there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of her case on which she bears the ultimate burden of proof. *Id*. at 322–23.   Only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 249 (1986).   "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.   An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v.*

*Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (*citing Anderson*, 477 U.S. at 248).

Once the movant has satisfied this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Non-movants must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[ ], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

In determining whether a genuine issue for trial exists, the court must view all the evidence in the light most favorable to the non-movant. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). Likewise, the reviewing court must draw all justifiable inferences from the evidence in the nonmoving party's favor. *Anderson*, 477 U.S. at 255. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam).

A reviewing court is restrained during summary judgment proceedings from making the sort of determinations ordinarily reserved for the finder of fact at a trial. *See Strickland v. Norfolk Southern Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012) (citations and quotations

omitted) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

## V. DISCUSSION

The Defendants have three main arguments for why they should prevail on summary judgment: (1) CitiMortgage appropriately applied the Plaintiffs' payments; (2) the Defendants should not be responsible for the accounting errors of the prior loan-holder; and (3) the Plaintiffs failed to meet their contractual obligations by failing to make payments. The Plaintiffs' response brief primarily focuses on the purported misdeeds of CitiMortgage in failing to properly apply payments and wrongly rejecting the Plaintiffs' payment attempts. While the record before the Court suggests there may be a genuine dispute of fact regarding irregularities in the accounting while CitiMortgage held the Plaintiffs' loan, the Plaintiffs do not establish that the Defendants breached their contract.

Additionally, the Plaintiff largely failed to follow the Court's order that "[i]n all briefs filed by any party relating to the [dispositive] motion, the discussion of evidence in the brief must be accompanied by a specific reference, by page and line, to where the evidence can be found in a supporting deposition or document." (Doc. 73 at 2). Despite this deficiency, the Court reviewed all the evidence presented, including Mariann Collins's

deposition transcript.  In rendering this opinion, the Court gives due weight to the testimony of Ms. Collins.[3]

While the Court carefully considered Ms. Collins's testimony in light of the arguments made by counsel, the Court did not "attempt to distill every potential argument that could be made based on the materials before it on summary judgment." *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012).  The "onus is on the parties to formulate arguments." *Id*.; *Resolution Trust Corp. v. Dummar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); *A.L. v. Jackson Sch. Bd.*, 635 F. App'x 774 (11th Cir. 2015).  The Plaintiffs primarily focused the arguments in their response brief on the purported wrongful acts of CitiMortgage.  The Plaintiffs failed to adequately explain how the Defendants purportedly breached the contract, they failed to provide the court with a defined timeline, and they failed to cite specific factual evidence in the record to support their positions.  In short, the Plaintiffs are unable to meet their burden to demonstrate that there is a genuine dispute as to the material facts as to these defendants.

---

[3] The Defendants suggest in their reply brief that Mariann Collins's deposition testimony does not qualify as evidence. *See* doc. 105 at 1–2 (stating that the Plaintiffs failed to "attach any evidence creating a genuine issue of material fact that prior servicer CitiMortgage, Inc. ("Citi") failed to apply any payments Plaintiff made to Citi" and that "Plaintiffs make generic arguments that are completely unsupported by evidence").  The Defendants correctly observe that the Plaintiffs do not attach their own exhibits to their Motion for Summary Judgment, instead relying almost exclusively on Ms. Collins's deposition testimony, which the Defendants provided to the Court.

Which party filed the deposition is immaterial, it is now part of the record before the Court, and nothing prevents the Plaintiffs from citing that document.  The law in the Eleventh Circuit is clear that "a litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (citing *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013)); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir.) *modified on other grounds on denial of reh'g*, 425 F.3d 1292 (11th Cir. 2005).  Accordingly, Ms. Collins's testimony relating facts she observed is properly considered by this Court.

**A.** **Defendants persuasively argue that the Plaintiffs failed to uphold their end of the bargain, precluding the Plaintiffs from asserting a breach of contract under Alabama law.**

Defendants correctly state that the elements of breach of contract under Alabama law are (1) a valid binding contract; (2) the plaintiff's performance; (3) the defendant's nonperformance; and (4) resulting damages. (Doc. 97 at 7) (citing *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002)). Defendants argue that because the Plaintiffs undisputedly stopped making mortgage payments, the Plaintiffs cannot establish their own performance under the contract. The Defendants assert that they are entitled to summary judgment because the Plaintiffs fail to prove this essential element.

Without citing to the record, the Plaintiffs assert that the Defendants never applied some payments and wrongly rejected other payments. (Doc. 104 at 13). The Plaintiffs specifically mention a November 2013 payment that was returned to them. However, the record is undisputed that it was *not* the Defendants that took those actions because Ms. Collins admitted that she never paid or attempted to pay the Defendants any money, and the Defendants did not assume the mortgage until 2015. The Plaintiffs further claim that the amount owed was inflated when the "Note was accelerated," without specifying what entity accelerated the note or how much the amount was inflated.

Without pointing to any supporting evidence, Ms. Collins asserts that the Defendants demanded $15,000 immediately upon assuming responsibility for the loan. (Doc. 97-2 at 130). The undisputed record, however, evidences that the Plaintiffs had not

successfully made a payment since April of 2014.[4]  By February of 2016, the date when the Plaintiffs assert that they sent the Defendants a letter disputing the default, acceleration, and foreclosure sale (doc. 104 at 7), the Plaintiffs had failed to make twenty-two payments. The Plaintiffs owed $783 a month and by February 2016, they would have owed more than $17,000 of missed payments.  The Plaintiffs do not attempt to argue that CitiMortgage's purported errors completely absolved them of their mortgage responsibility, and instead assert that they tried to set aside their monthly mortgage payment even when CitiMortgage was rejecting those payments. (Doc. 97-2 at 161–62).  The Plaintiffs agree that they *never* paid or attempted to pay the Defendants, even though they agree that they had not successfully made a payment in well over a year by the time the Defendants assumed the mortgage.

The Plaintiffs blame CitiMortgage for rejecting payments that resulted in the Plaintiffs falling behind in their payments, but do not point to any wrongful action on the part of the Defendants which would constitute breach of contract.  The contract gives the lienholder the right to foreclose after any missing or late payments.  The Plaintiffs admit that, in February 2016, when the Plaintiffs allege that the Defendants commenced foreclosure proceedings, they had not made a mortgage payment in nearly two years and that they had not paid the Defendants any money.  While Ms. Collins vaguely asserts that they did not owe the full $15,000, she fails to provide any support for this bare allegation

---

[4] In her deposition, Ms. Collins suggests that she had last made a successful payment in March of 2014, but the Defendants' records indicate that it was April.

and the undisputed record reflects otherwise.  Accordingly, the Plaintiffs breach of contract claim fails on this point.

**B.**         **The Plaintiffs do not have a viable breach of contract claim for a purported REPSA violation.**

As stated above, the only remaining claim is a breach of contract claim.  However, the Plaintiffs appear to have attempted to recast their breach of contract claim as a Real Estate Settlement Procedures Act ("RESPA") claim.  Specifically, in their response brief, the Plaintiffs assert that "[b]ecause the [RESPA] regulations cited above required the new servicers, the Defendants, to investigate, fix, and/or respond to the errors cited by the Plaintiffs, the Defendants clearly had a contractual obligation to address and or correct these account errors even if caused by the CitiMortgage." (Doc. 104 at 21).  The contract does not incorporate any statutes by reference and does not mention RESPA or its requirements.  Moreover, the Court previously dismissed the Plaintiffs' RESPA claim. (Doc. 35 at 6–8).  This argument further fails because nowhere in the section of their response brief addressing the alleged RESPA violation do the Plaintiffs provide any evidentiary support for this position.  While the Plaintiffs assert that they sent the Defendants a Qualified Written Report ("QWR"), they do not provide a copy of the purported QWR or describe the contents of that document.

In addition to failing to support this claim with any evidence, the Plaitniffs fail to provide relevant legal support.  The Plaintiffs cite an Eleventh Circuit case to support their contention that statutory requirements are incorporated into mortgage contracts. (Doc. 104 at 15) (citing *Bates v. J.P. Morgan Bank, N.A.*, 768 F.3d 1126 (11th Cir. 2014)).  In *Bates*,

the plaintiff sought to hold the bank liable for breach of contract for failure to comply with certain regulations promulgated by HUD. *Id.* "The regulations were incorporated into her deed as conditions precedent to the power to accelerate and the power of sale." *Id.* at 1130. The court further explained that "the language clearly makes compliance with HUD regulations a condition precedent to the bank's right to accelerate the debt or exercise the power of sale." *Id.* at 1132. Thus, the court determined that Georgia courts would likely enforce the provision of the contract that specified compliance with HUD regulations was a condition precedent of the bank's right to accelerate. *Id.* at 1133. [5]

Here, the Plaintiffs appear to seek to impose new and different obligations beyond those which are required in the contract. Unlike the contract in *Bates*, the contract here does not incorporate statutory obligations by reference or even mention any statutory obligations. The contract does not state how or even if the lender should respond to an accounting request. The only notice requirements are those related to foreclosure and which provide for publication in a local newspaper. (Doc. 97-1 at 9).

---

[5] The Plaintiffs also cite a First Circuit case that endorsed the practice of relying upon a statute to interpret contract claims and resolve contractual ambiguities. *See Young v. Wells Fargo, N.A.* 717 F.3d 224 (1st Cir. 2013). In *Young*, in reviewing the district court's decision on the defendant's motion to dismiss, the First Circuit observed that the Home Affordable Modification Program ("HAMP") federal initiative and the statutes that create HAMP could be used as extrinsic evidence to interpret ambiguous contract terms. *Id.* at 237. There, the plaintiffs did not attempt to dispute the district court's determination that there was no private right of action under HAMP. First, this case serves only for its persuasive value. Second, here, the Plaintiffs do not attempt to interpret ambiguous contractual terms. Moreover, while there is a private right of action available under RESPA, the Court already deemed this claim insufficiently pled. It cannot now be revived as a contractual obligation.

The Court also already determined that the Plaintiffs failed to state a RESPA violation in their First Amended Complaint and dismissed that claim with prejudice.[6] (Doc. 35 at 6).  Specifically, the Court observed that the Plaintiffs did not attach the alleged Qualified Written Report and "have not alleged a single fact regarding the content of the alleged QWRs." (Doc. 35 at 7).  Even if this claim were not already dismissed, the record before the Court is no better than it was at the pleading stage, and the Court would again be compelled to find that the claim was not adequately supported.

## VI.    CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment (Doc. 97) is GRANTED.  A separate final judgment will follow.

DONE this 19th day of December, 2019.


           /s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] The Second Amended Complaint does not contain a RESPA claim because it was dismissed with prejudice from the First Amended Complaint. *See* (doc. 35 at 27-28).